REUBEN CHAPMAN, GOVERNOR, &C., FOR THE USE OF JOHN B. LEAVITT AND RUFUS LEAVITT, PLAINTIFF IN ERROR, *v.* ALEXANDER SMITH, BOLLING HALL, MALCOLM SMITH, AND JOHN G. GRAHAM.

By the laws of Alabama, where property is taken in execution, if the sheriff does not make the money, the plaintiff is allowed to suggest to the court that the money might have been made with due diligence, and thereupon the court is directed to frame an issue in order to try the fact.

In a suit upon a sheriff's bond, where the plea was that this proceeding had been resorted to by the plaintiff and a verdict found for the sheriff, a replication to this plea alleging that the property in question in that trial was not the same property mentioned in the breach assigned in the declaration, was a bad replication and demurrable.

Where the sheriff pleaded that the property which he had taken in execution, was not the property of the defendant, against whom he had process, and the plaintiff demurred to this plea, the demurrer was properly overruled.

THIS case was brought up by writ of error from the District Court of the United States, for the Middle District of Alabama.

It was a suit upon a sheriff's bond. Alexander Smith was the sheriff, and the other defendants in error his sureties. The Leavitts were citizens of New York.

It was altogether a case of special pleading.  There were fourteen breaches assigned in the declaration, ten pleas, with replications and demurrers on both sides.  There were demurrers to the breaches, demurrers to the pleas, and demurrers to the replications, upon which sometimes one party obtained a judgment, and sometimes the other; and whilst all this was going on between the principals, the sureties kept up an outside war of their own, by pleading the Statute of Limitations which led to a succession of other pleadings.  The record contained thirty-eight printed pages, which were occupied exclusively with pleas, replications, demurrers, joinders, and judgments upon them; and finally the case came up to this court upon two judgments upon demurrers.  In giving a narrative of all this, the controversy between the plaintiffs and the sureties will be detached from the tangled history, and left out of this report.

The facts of the case, upon which this system of pleading arose, were these:

On the 28th of September, 1839, John W. and Rufus Leavitt obtained a judgment against Jeremiah M. Frion, in the Circuit Court of the County of Coosa, Alabama, for $3,472.

On the 17th of the ensuing October, a writ of *fieri facias* was issued, and placed, on the 24th, in the hands of Alexander Smith, the sheriff.

The return day of this writ was the fourth Monday in March, 1840, when the sheriff returned that he had levied, on the 1st February, 1840, upon dry goods, hardware, carriages, &c.

On some day after this, but when the record did not show, the time of the sheriff expired, and on the 12th of September, 1840, the sheriff, by leave of the said Circuit Court, first had and obtained, altered, or amended his said return on said writ by adding thereto the following words and figures, to wit:

" The above goods have been claimed by A. B. Dawson and Samuel Frion, assignees of J. M. Frion, defendant in execution, and claim bond given to William J. Campbell, now sheriff, and my successor in office, September 12, 1840.

"A. SMITH, late Sheriff."

It is now necessary, before the next step in the narrative is referred to, to mention two statutes of Alabama, which are so minutely stated in the opinion of the court, that they may be succinctly mentioned here.   One is, that if a person, other than the debtor, claims the property levied upon, he may make affidavit that he is the owner, and give bond that it shall be forthcoming, whereupon the sheriff shall suspend the sale.  The other is, that the plaintiff in the suit may make a suggestion to the next court, that the money could have been made by the sheriff by the exercise of due diligence, whereupon the court shall order

an issue to be framed to determine the fact whether or not due diligence was used. We now proceed with the narrative.

At the April term, 1843, of the Circuit Court for the County of Coosa, John W. and Rufus Leavitt made a suggestion, in conformity with the above statute, that the money might have been made by the sheriff, if he had used due diligence; and thereupon an issue was made up between them and the sheriff, who denied the allegation.

At September term, 1847, this issue was tried and resulted in a verdict by a jury in favor of the sheriff.

In October, 1848, J. W. and R. Leavitt, using the name of the Governor, to whom the bond was given, brought this suit against the sheriff and his sureties, upon the official bond, in the District Court of the United States for the Middle District of Alabama.

The declaration assigned fourteen breaches.

*First.* That the Leavitts, at the Fall term of 1839 of the Circuit Court of Coosa County, recovered judgment against one Frion, for $3,472; that a *fi. fa.* issued thereon, and came to the hands of the said Smith; that although there were goods, &c., of the said Frion, out of which the said judgment might have been levied, and of which the said Smith had notice, yet he neglected and refused to levy, &c.

*Second.* That Smith did seize certain goods, and might have levied the money by sale, and neglected to sell.

*Third.* That he seized goods which he might have sold, but did not, and returned the levy on the goods.

*Fourth.* That he seized, might have sold, but did not; — returned that he had levied. Afterwards, on 12th September, 1840, amended his return by adding that the goods had been claimed, &c. Averring amended return to be false, because no claim was made before the return day of the writ.

*Fifth.* Same as last, except that it averred that the amended return was false, because no claim on oath was made.

*Sixth.* Same as fourth, except averring that no bond was given by claimants.

*Seventh.* That the amended return was false, because no person claimed the property, and made oath, and no person claimed the same and gave bond according to the statute.

*Eighth.* Seizure, claim, duty of sheriff to prepare bond, but did not.

*Ninth.* Seizure, claim, no bond taken, goods delivered to claimants and wasted by them.

*Tenth.* Seizure, claim, no bond taken, goods delivered to claimants and by them consumed and wasted, and no part of

the goods delivered to the Leavitts, nor any part of the damages paid to them.

*Eleventh.* Same, except that it is alleged that Smith suffered goods to be wasted, &c.

*Twelfth.* Same as last.

*Thirteenth.* Seizure, claim, bond, and, by negligence of Smith, bond lost. ·

*Fourteenth.* Same as last, except that the bond taken was not returned.

*Spring Term,* 1850. The defendants demurred to the 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, and 14th breaches.

To the 1st, 2d, and 3d breaches, the defendants pleaded that the said Leavitts, in the Circuit Court of Coosa County, according to the statute of Alabama, suggested the issuing of the *fi. fa.;* that it came to the hands of Smith to be executed; that he might by due diligence have made the money and did not; that an issue was made up whether Smith by due diligence could have made the money, &c.; that the issue was tried and found for Smith, for whom judgment passed, &c. And the defendants aver, that the writ of execution mentioned in the breaches, and that mentioned in the suggestion, were one and the same; and that the alleged neglects and defaults mentioned in both, were one and the same, and not different. ·

The plaintiff filed a joinder in the demurrer to the 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, and 14th breaches.

To the three pleas put in by the defendants to the first, second, and third breach, the plaintiff put in a replication that the defaults, in the said pleas mentioned, were not the same defaults mentioned in the breaches.

The defendants demurred to this replication, and the plaintiff joined in the demurrers.

At the *Fall term* of 1850, the court sustained the defendants' demurrer to the 8th and 13th breaches of the plaintiff, and overruled it as to the 4th, 5th, 6th, 7th, 9th, 10th, 11th, 12th, and 14th breaches, and that the defendants have leave to plead to the last-named breaches.

The demurrer of the defendants to the replication of the plaintiff to the plea of the defendants to the 1st, 2d, and 3d breaches, was sustained. And on motion, the plaintiff had leave to amend the 8th and 13th breaches of the declaration.

*December Term,* 1849. The demurrer of the defendants to some of the breaches, having been overruled, they now filed a plea to the 4th, 5th, 6th, and 7th breaches. They set forth the suggestion to the court, the issue, trial, and verdict. They aver

that upon that trial the truth of the amended return was brought up, and that the verdict found the amended return to be a true return; and that this is the same as the amended return mentioned in the breaches.

And the defendant also filed pleas to the 9th, 10th, 11th, 12th, and 14th breaches, their demurrers to which had been overruled. The first plea, called the sixth in number from the beginning, set forth, that after the levy, the goods were claimed by one A. B. Dawson, and one Samuel Frion, as assignees of J. M. Frion; that an affidavit was made by Dawson; that Dawson and Samuel Frion gave a bond; that the affidavit and bond were duly returned to court; that the suit of the Leavitts against the claimants was put upon the docket; that at the Fall term of 1840, the plaintiffs refused farther to prosecute their levy; whereupon the court ordered the goods to be restored to the claimants.

Seventh plea — to same breaches, same in substance nearly as preceding.

Eight plea — nearly same.

Ninth. That the property taken in execution was not the property of Jeremiah M. Frion, the defendant in the suit.

Tenth — not guilty of the several breaches.

The plaintiff demurred to the 4th, 6th, 7th, 8th, 9th, and 10th pleas.

*Spring Term*, 1851. The plaintiff's demurrer to the 4th, 8th, 9th, and 10th pleas was overruled; the demurrer to the 7th plea was sustained; the demurrer to the 6th plea, as a plea to the 9th, 10th, 11th, and 12th breaches was sustained; the demurrer to said 6th plea as a plea to the 14th breach was overruled.

The plaintiff had leave to reply to the pleas, the demurrer to which was overruled; and the defendants had leave to amend the pleas, the demurrer to which was sustained.

*May Term*, 1851. The defendants filed an amended 7th plea to the 9th, 10th, 11th, and 12th breaches in the declaration. The plea averred that before the return day of the execution, the goods were claimed by Dawson and Frion, and an affidavit made by Dawson; that the execution and claim were returned to the court, and a suit docketed between the Leavitts as plaintiffs, and Dawson and Frion as defendants; that at the Fall term of 1840, the Leavitts refused to make up an issue; that the court thereupon ordered the goods to be restored to the claimants; that they were accordingly restored.

The plaintiffs demurred to this amended plea, which demurrer was overruled, and then the plaintiffs filed a replication.

The replication averred that after the return day of the writ, to wit, on the second day of the term, Dawson made his affida-

vit that the goods were not the property of Jeremiah M. Frion, but were the property of himself and Samuel Frion; that, on that day, Dawson and Samuel Frion, together with one Graham, executed their bond to the plaintiffs in the sum of $3,479, conditioned to pay all damages that the jury might assess against the obligors; that they also executed another bond to one William J. Campbell for a like sum with a like condition; that before that day Smith had ceased to be sheriff, and that Campbell was the sheriff; that the plaintiffs moved the court to dismiss the claim of Dawson and Frion, on the ground of the insufficiency of the claim-bonds, which motion was overruled; that at the Fall term a judgment of nonsuit was rendered against the plaintiffs for declining to make up an issue; that the judgment thus rendered against them referred to the claim-bonds above described and not in any claim-suit commenced by said affidavit described in the said amended 7th plea of defendant, nor in any other or different claim-suit; that the affidavit described in said 7th amended plea was never returned to said court, either before or after the return of said writ of *fieri facias;* that the plaintiff never knew or had any notice until the year 1847, that said last-mentioned affidavit had been made; that the said goods levied upon, as aforesaid, were delivered to the said Dawson and Samuel, by Campbell, in obedience to the said last-mentioned judgment or order of said court, without this, that they were delivered to them by the said Alexander in obedience to any other judgment or order of said court; that the plaintiffs prosecuted their writ of error to the Supreme Court of said State to reverse said last-mentioned judgment, and that the said judgment was, by said Supreme Court, at January term, 1842, reversed and remanded to said Circuit Court; that at the Fall term of said Circuit Court for 1842, the said claim put in as aforesaid by said Dawson and Samuel, was, by the consideration and judgment of said court, dismissed, because of the insufficiency of the said last-mentioned claim-bonds, the said Dawson and Samuel declining and refusing to execute other claim-bond or bonds as they were required to do by the said Circuit Court; and plaintiff avers that the said last-mentioned judgment remains in full force, not reversed, annulled, or set aside in any way. All which the said plaintiff is ready to verify; wherefore he prays judgment, and his debt and damages by him sustained, by reason of the facts set out in said 9th, 10th, 11th, and 12th breaches, to be adjudged to him.

*December Term,* 1851. The defendants demurred to this replication of the plaintiff to the seventh amended plea.

The court then pronounced its final judgment, as follows:

This day came the parties, by their attorneys, and thereupon

came or to be heard the demurrer of the plaintiff to the amended 7th plea of the defendants to the 9th, 10th, 11th, and 12th, breaches of the plaintiffs; and, after argument had, it seems to the court that the said plea is sufficient in law, &c.; it is therefore considered by the court that the said demurrer be overruled. And thereupon the plaintiff filed his replication to the said amended 7th plea, and the defendants filed their demurrer to the said replication, and, after argument, it seems to the court that the said replication is insufficient, &c.; it is therefore considered by the court that the said demurrer be sustained, and that the said defendants go hence without day, &c., and recover of the said John W. and Rufus Leavitt, the persons for whose use this suit is brought, their costs in this behalf expended, for which execution may issue, &c.

The plaintiffs sued out a writ of error, and brought the case up to this court. It came up upon the correctness of the judgment of the court below in sustaining the defendant's demurrer to the replication of the plaintiff to the plea upon the 1st, 2d, and 3d breaches, and also in sustaining the demurrer of the defendants to plaintiff's replication to the 7th amended plea.

It was submitted on a printed brief by *Mr. Prior*, for the plaintiffs in error, and argued by *Mr. Badger*, for the defendants in error.

*Mr. Prior.* The replication to the plea No. 2, to the three first breaches is good. The matter of the plea is a summary proceeding under a statute. Clay's Digest, 218, § 85.

The jurisdiction in summary proceedings under a statute, in derogation of the common law, is strictly construed and limited to cases within the letter of the statute. Smith v. Leavitts, 10 Ala. 92; Leavitt v. Smith, 14 Ala. 279.

The 2d and 3d breaches are for neglecting to sell the goods. This replication is an answer to the plea as to these breaches, unless it be held that the jurisdiction of the court, in the summary proceeding set out in the plea, is coextensive with the common-law jurisdiction, in the present action, so far as the jurisdiction embraces the matters of these two breaches. For the summary proceeding to operate as an estoppel, in the present action, the subject-matter in the two proceedings must be identical; and this court must take judicial notice of the identity, notwithstanding their identity is denied by the replication. If any question can be determined by the court under these breaches, which could not have been determined in the summary proceeding, then the replication is good. The proceeding embraced the neglect to make the money only. Other questions may be tried under these breaches. People v. Ten Eyck, 13 Wend. 448; Aireton v. Davis, 9 Bing. 740.

The 4th, 5th, 6th, and 7th breaches are for a false return. The plea, that the truth of the return had been tried and determined in a summary proceeding is bad. The sheriff's return can be contradicted by a party to the writ in an action for a false return, only. 46 Law Library, 283, 327.

The return was competent evidence in the trial of the summary proceeding, and as it could not be contradicted by the plaintiffs, who were parties to the writ, it was conclusive of the facts set out in the return. The return of the claim, on the trial, was a full protection to the sheriff from the liability created by the levy. When the claim was made by Dawson, the sheriff was bound to suspend proceedings on the levy. Clay's Digest, 211, § 52; Ib. 213, § 62; so much of the act of 1812, (Clay's Digest, § 52,) as requires two bonds, is repealed by the act of 1828, (Ib. 213, § 62); Bradford *v.* Dawson, 2 Ala. 203; Hughes *v.* Rhea, 1 Ala. 609.

But these breaches are for a false return, the only proceeding in which the truth of the return can be tried. The judgment in the summary proceeding is no bar, therefore, to these breaches, and the demurrer to the fourth plea ought to be sustained.

The 8th breach is for neglect to take claim-bond, when Dawson claimed the goods levied on. The demurrer to this breach ought to be overruled. The breach is a good one. Lane *v.* Harrison, 6 Munf. 573; ———— *v.* Bevan, 5 B. & C. 284; 4 Tyrw. 272; Clopton *v.* Hoppin, 6 Ad. & E. 468, (51 E. C. L.)

The 13th breach is for loss of the bond, and the demurrer ought to be overruled. See above cases.

The 9th, 10th, 11th, and 12th breaches are for not taking claim-bond from Dawson. Clay's Digest, 211, § 52; Ib. 213, § 62.

Neither the amended 7th plea, nor the 8th plea, is a good defence to these breaches; and the demurrer to the 8th plea ought to be sustained; and the demurrer of the defendants to the replication to the amended 7th plea ought to be overruled. The demurrer will reach back to the defect in the plea. The gist of the plea is that the plaintiffs in the claim suit refused to prosecute their levy, and that the goods were restored to the claimants by order of the court. This plea does not however aver that the sheriff took a claim-bond. These breaches are for not taking a bond. The plea does not answer the breaches. Unless there was a bond conforming to the requisition of the statute filed, with the execution and affidavit, there was no such cause in court as the plaintiffs could be compelled to prosecute. Leavitt *v.* Dawson and Friou, 4 Ala. 335; Leavitt *v.* Smith, 7 Ala. 179.

The breach of duty was the neglect to take bond before the

return day of the execution. On that day the plaintiff's right of action, for this breach of duty, was perfect. How do the matters of this plea bar this right? It may be that the plaintiffs refused to prosecute their levy in the claim-suit, because there was not a good claim-bond. They did refuse for this cause. Leavitt v. Dawson, 4 Ala. 335. How could the refusal of the plaintiffs to prosecute a suit which they did not institute, which they were not bound to prosecute, which was improperly in court, and improperly there by the breach of duty for which the sheriff is now sued, destroy the plaintiff's right to recover for this act of official misconduct?

. . But if this plea should be held good, then the replication avers that the judgment set out in this plea was rendered in a claim-suit, commenced after the return day of the execution, and therefore after plaintiff's right of action against the sheriff was perfect. The replication concluding with an *absque hoc*, is a full answer to the plea.

The 8th plea sets up, by way of estoppel, the judgment in a summary proceeding. Clay's Digest, 218, § 85. The neglect to take a claim-bond before the return day of the execution, was a breach of duty for which plaintiffs could maintain an action; but for this breach of duty, they could not recover in this summary proceeding. Then how can they be barred by this plea? Smith v. Leavitts, 10 Ala. 92; Ib. 14 Ala. 279.

The gravamen of these breaches is not the loss or waste of the goods, but the neglect to take the bond. The plaintiffs could maintain an action against the sheriff for the loss of the goods by virtue only of the lien created by the execution. When the affidavit was made by Dawson, as alleged in these breaches, it was the duty of the sheriff to suspend proceedings on the levy. Clay's Digest, 211, § 52, and to prepare a bond for the claimant to sign; Ib. 213, § 62. Until he prepared and tendered the bond, and the claimant refused to execute it, the sheriff could not sell the goods. The lien of the plaintiffs on the goods was put in abeyance at the moment the sheriff's right to proceed on the levy was suspended. Both were suspended by the claim of Dawson, and could not be revived, except by the direct withdrawal of the claim by Dawson, or until, by refusing to execute the bond, he indicated his purpose to abandon the claim. Until the right of the plaintiffs, to have the goods sold, was revived by the withdrawal or the abandonment of the claim, the plaintiffs had no such interest in the goods as would entitle them to maintain an action against the sheriff for their loss or waste. The claim-bond, if one be made, is substituted for the lien on the goods. If the sheriff neglect to prepare the bond,

this does not destroy the right of the claimant to have a stay of proceedings on the levy. But this neglect is a breach of duty to the plaintiffs, for which they may maintain an action. The loss or waste of the goods is no injury to the plaintiffs when they had no right to have them sold, but is an injury to the true owners, for which they may sue and recover.

Now, as the plaintiff's lien on the goods has been destroyed, and he has not got a claim-bond as a substitute for the lien, he has been damaged. The claim destroyed the lien, not by act of the claimant, but by operation of law; Clay's Digest, 211, § 52; therefore the claimant is not liable for the destruction of the lien, except upon his bond. If the lien be suspended by the claim, and no bond be tendered to the claimant by the sheriff, the suspension continues until the return of the execution. The injury to the plaintiff is not the suspension of the lien, but the neglect to have the bond as a substitute for the lien.

The demurrer to the 6th plea to 14th breach, ought to be sustained.

The 9th plea is no answer to any of the breaches; not to the first three, for the defendant in the execution may have had other goods than those levied on; not to those for false return, for the plaintiff had a right to have a true return; not to those for neglect to take bond, nor to those for loss of the bond, for it was the duty of the sheriff to take the bond and to return it to the court. The neglect to take it, or the loss of it after it was taken, was a clear breach of duty.

Not guilty — not a good plea in debt.

*Mr. Badger*, after enumerating the breaches assigned in the declaration, proceeded with his argument.

To the 1st, 2d, and 3d breaches, the defendants pleaded that the said Leavitts, in the Circuit Court of Coosta County, according to the statute of Alabama, suggested the issuing of the *fi. fa.*; that it came to the hands of Smith to be executed; that he might, by due diligence, have made the money, and did not, &c.; that an issue was made up whether Smith, by due diligence, could have made the money, &c.; that the issue was tried and found for Smith, for whom judgment passed, &c.

To this plea plaintiff replied that the defaults in the said plea mentioned were not the same defaults mentioned in the breaches, to which replication the defendants demurred, and the court sustained the demurrer.

It is insisted, for the defendants in error, that the replication was bad in law, and was therefore properly overruled by the court.

The plaintiff ought, if he admitted the identity of the defaults, to have replied *nul tiel record;* if he denied that identity, to have new assigned.

Whenever defendant justifies, or in any manner discharges himself from liability for a charge or claim of the plaintiffs, it is the duty of the latter to new assign, if he insists that the matters justified are not the same as those for which he declares. Nothing can be clearer than this, if the reason for a new assignment be considered.  That reason is, that the defendant is supposed to mistake the particular instance set forth by the plaintiff for some other of the same class, and therefore plaintiff should correct that mistake by averring by a new assignment, that he proceeds for another demand than that justified, &c., by the defendant, and this new assignment is in nature of a new declaration, or, in strictness, a particular expression of what the declaration designed, and which has been misunderstood by defendant.  Therefore if the plaintiff, under such circumstances, do not new assign, and the defendant in proof supports his justification of any matter of the same general nature, he is entitled to a verdict.

See account of the nature, office, and purposes of a new assignment.  1 Chitty, 434, *et seq.*  Manner of new assigning, page 439.

Defendant may plead to the newly assigned matter as to the declaration, page 441.

See, also, Mr. Stephens's account of new assignments.  Stephens on Pl. Amer. Ed., page 220 to 227, and note 22, page 226. See, also, James v. Lingham, 35 Eng. C. L. R. 225;  5 Bing. N. C. 553;  Branckner v. Molyneux, 9 Eng. C. L. 615;  1 Man. & Gran, 710;  Moses v. Levy, (in error,) 45 Eng. C. L. 213;  4 Adol. & Ellis, N. S.

In which last case Lord Denman says : " Where the declaration points at one particular transaction, and the plea applies itself to one particular transaction of the same sort, different from that intended by the declaration, or where the plea narrows the declaration contrary to the intention of the declaration, a new assignment is necessary."

This is exactly our case.  To allow the traverse, instead of the new assignment, would be directly contrary to authority, and would cause injustice to the defendant by depriving him of his right to plead anew to the true transaction intended by the plaintiff and mistaken by him.

The replication that the defaults are not the same, is bad. No such replication has been sustained by judicial authority in such a case as ours.  Where, indeed, the defendant pleads a former recovery against him for the same cause of action, there

the replication, that it is not for the same cause of action, is good, and may be used instead of a new assignment; but the reason is, that the plea admits a liability as to the cause of action to have once existed, and alleges that it has been satisfied by the recovery, so that, if not so satisfied, it still exists. See Seddon v. Tutop, 6 T. R. 607; Note 22, page 226; 4th Amer. Ed. Stephens on Pl.

The difference between the two classes of cases is this: In one the defendant avers that there never was a right of action; in the other he admits a right of action and avers payment, that is, extinguishment by the judgment. In the former, a new assignment is necessary; in the latter, not. And by this plain distinction the cases in the books are reconciled.

The defendants demurred to the 8th and 13th breaches, and their demurrer was sustained.

It was rightly sustained. The 8th breach not showing that sureties were offered to sheriff, and without that he was not obliged to prepare a bond. Clay's Dig. page 213, · § 62; Eiller v. Wood, 24 E. C. L. 464; Mann v. Vick, 1 Hawks's Rep. 427.

The 13th breach, showing that the amended return stating the taking of the claim-bond was made 20th September, 1840, by Smith, late sheriff, and the condition of the bond sued on, as set out in the declaration, showing that his office expired 22d February, preceding, and the said return, as set out in the said breach, showing that the claim-bond was given not to Smith, but to his successor in office, and, therefore, the custody of the said bond not belonging to Smith, the averment that by his negligence it was lost, is idle, inconsistent, and absurd, &c.

To the 4th, 5th, 6th, and 7th breaches, the defendants pleaded, that the Leavitts instituted proceedings in the Circuit Court of Coosa County, against Smith, according to the statute, &c., and an issue was made up and tried, upon which issue the truth of the amended return was tried, and the truth thereof found, and judgment rendered for Smith, &c. The plaintiff demurred to the said plea, and the court overruled the demurrer.

It is insisted for defendants in error, that this demurrer was properly overruled, because the verdict and judgment stated in the plea, were conclusive of the truth of the amended return set out in the breaches, the falsehood of which is the gist of these breaches — conclusive as to Smith, the sheriff, and in this action whatever concludes the Leavitts as against Smith, concludes the plaintiff as against him and the other defendants, his sureties. Gardner v. Buckbee, 3 Cowen, 126, and cases there cited; Leavitts v. Smith, 14 Ala. N. S. 279, 285; David-

11 *

son *v.* Stringfellow, 6 Ala. N. S. 34; Smith *v.* Leavitts, 10 Ala. N. S. 92, 192; Cummings *v.* McGehee, 9 Porter, 351.

And because, also, all these breaches show the amended return to have been made after the said Smith was out of office, and hence it does not affect either of the parties in this action. Evans *v.* State Bank, 13 Ala. N. S. 787.

The defendants by their 6th plea pleaded to the 9th, 10th, 11th, 12th, and 14th breaches, that after the seizure of the goods, a claim was interposed, affidavit made, bond given, and the same returned; that a motion was made to dismiss the claim for insufficiency of the bond; that motion was overruled, and such proceedings had that the court ordered goods, &c., to be delivered up to the claimants, and they were delivered accordingly. And the defendants by their 8th plea further pleaded, as to the 9th, 10th, 11th, and 12th breaches, that after the return of the execution, the Leavitts entered a suggestion according to the statute, that the money might have been made, &c., issue thereon, verdict for Smith, and judgment averring the identity of the execution and alleged defaults in the breaches with those set out in the suggestion, &c. The defendants, by their 9th plea, also pleaded severally to all the breaches, that the goods and chattels levied upon, as stated in the several breaches, were not the property of the defendant in the execution, nor subject to be taken for the payment, &c.; and also by their 10th plea, that said Smith was not guilty of the several defaults, &c.; and to these pleas plaintiff demurred.

The defendants, by their 7th plea, pleaded to the 9th, 10th, 11th, and 12th breaches, that the execution, with the levy and interposition of claim was returned, and the claim-suit between the claimants and the said Leavitts was duly entered, and afterwards such proceedings were had that the court ordered the property levied on to be delivered up to the claimants, which was done.

To this 7th plea the plaintiff replied: That claim was interposed; affidavit was made, and a bond made payable to the Leavitts, was made on the 23d March, 1840, being the second day of term, to which execution was returnable; that on the same day another bond was made payable to William J. Campbell; (both bonds are stated to have been executed by the claimants, but it is not stated by whom either was taken); that Smith ceased to be sheriff before the 23d March, and then parted with the possession of the goods to some one unknown, and when the affidavit and bond were made, Campbell, the new sheriff, had possession; that a motion to dismiss the claim was made for insufficiency of the bonds, was overruled, and judgment afterwards given for returning goods to claimants, at Fall

term, 1840, but not in any claim-suit commenced by the affi-
davit named in the plea.    The replication then avers that the
affidavit, mentioned in the plea, was never returned, and plain-
tiff had no notice of its execution until 1847; that the goods
levied on were delivered to claimants by Campbell, with a
formal traverse that they were delivered by Smith in obedience
to any other judgment or order of the court.    And the replica-
tion alleges that a writ of error was brought to the Supreme
Court of Alabama upon the judgment which, in 1842, was
reversed, and afterwards, in the Circuit Court of Coosa, the
claim was dismissed, &c., and concludes with a verification, &c.
To this replication defendants demurred.

As to the 9th, 10th, 11th, and 12th breaches, it is insisted, 1st.
That the matter contained in the defendants' 6th plea is a
good bar, for the order of the court directing the surrender of
the goods was one which the law obliged the sheriff to obey,
and must, therefore, protect him in obeying, (cases before cited
from Alabama Reports,) and that this matter was also a good
bar to the 14th breach.

2d.  That the verdict and judgment in the suit of the Leavitts,
by suggestion, against Smith, set out in the 8th plea, is a
good bar, for the matters which are alleged in those breaches
were proper to be offered, and would have tended to sustain
the suit by suggestion, and therefore the very question here
raised by these breaches has been in that suit decided; and it
being found by the verdict and judgment that the goods were
not subject to execution, the Leavitts have no interest in the
inquiry, what became of them, &c.    Cases before cited, par-
ticularly Gardner *v.* Buckbee, 3 Cowen, and Cummings *v.* Mc-
Gehee, 9 Porter.

For these reasons, as well as defects in the breaches them-
selves, it is insisted that their demurrer to the 6th and 8th pleas
was properly overruled.

It is further insisted that the 7th plea is a sufficient an-
swer to the 9th, 10th, 11th, and 12th breaches; the order in the
claim-writ being binding on the sheriff, and the replication
thereto being insufficient, impertinent, and fatally defective.
For, *First.*  The replication neither admits nor denies directly
the suit alleged in the plea, but is altogether evasive.  *Secondly.*
If replication is to be understood as denying it, it is bad be-
cause it can only be put in issue by *nul tiel record*; if to ad-
mit it, then the averments of the other proceedings, in the
replication, are idle and immaterial.  *Thirdly.*  The replication
tenders a formal traverse that Smith delivered up the goods to
claimants under any other order or judgment of the court than
that set out in the replication, and therefore seems to admit a

delivery by him under that order, and that order being a justification, the traverse tenders an immaterial issue. *Fourthly.* The plaintiff ought either to have replied *nul tiel record* of the order alleged in the plea, or admitting the record, have traversed the delivery under it, if he deemed the latter fact material. *Fifthly.* If goods delivered up under the order of the court, as the replication avers, it is immaterial in this suit by which hands the delivery was actually made, the plaintiffs charging the defendants on account of the seizure of the goods, and the order discharging Smith, whether obeyed by himself or his successor. *Sixthly.* The reversal of the order set out in the replication is immaterial, for the reversal cannot by relation make the sheriff a wrongdoer. Smith *v.* Leavitts, 10 Ala. 92; Leavitt *v.* Smith, 14 Ala. 284.

It is further insisted, that the 9th plea, that the goods levied upon, &c., were not the property of the defendant in execution, nor liable to be taken, &c., is a sufficient bar to all the breaches except the first.

The seizure under the execution does not conclude the sheriff as to the property in the goods — it amounts only to affirming his belief of ownership by the defendant in execution, and casts the burden of proof on him. He may notwithstanding aver and show that the goods were not subject to the execution, and such averment and proof discharges him from liability to the plaintiffs in execution in respect of such goods. Leavitt *v.* Smith, 7 Ala., N. S. 184, 185; Mason *v.* Watts, Ib. 703.

This plea being admitted by the demurrer, it is a matter immaterial to the plaintiff whether the goods were kept, or lost, surrendered to a claimant with or without a bond, or what became of them. Whoever has or may have a right to call upon the sheriff by reason of his disposition of the goods, the plaintiff has none — his whole right and interest therein being founded upon their supposed liability to the execution.

It is further insisted that the 10th plea — that Smith was not guilty of the defaults, &c., is a good answer to all the breaches.

Every breach avers a criminal violation of his duty by the sheriff, and, if true and sufficiently laid, would sustain an action on the case against the sheriff. The breaches are exactly equivalent to counts in an action on the case. The action is founded on the bond in order to call on the official sureties to make good the defaults of the sheriff, and no reason can be supposed why the legislature should design to require special pleading from the sureties and deny them the benefit of a general plea, by which the plaintiff is put to the proof of his whole allegation, while such requisition and denial do not apply to an action against the sheriff for the default. It would be more reasonable

to require such special plea in the latter action, the sheriff being cognizant of all the facts, than in the former, the sureties having no such knowledge. The only ground assumed on the other side is the technical one, that " not guilty " cannot be pleaded to an action of debt — but the position is not true.

In an action of debt on a recognizance for keeping the peace, suggesting an assault as the breach, the defendant may plead not guilty, *son assault demesne*, just as in an action of trespass for the assault. See form of plea, 7 Wentworth, 401.

So on debt in penal statute, and in debt against executors, suggesting *devastavit*. Coppin v. Carter, 1 T. R. 462; Wortley v. Herpingham, Cro. Eliz. 766; Ch. Pl. 3d Amer. Ed. 354; Langley v. Hayes, Mo. 302.

If such a plea is allowed in any action of debt, it should be in this. In action of debt on penal statute, &c., *nil debet* is a general issue, and puts the plaintiff on the proof of his whole case. If, then, the technical idea, that the plea of not guilty should not be allowed to an action of debt, does not prevent allowing the defendant in such action to plead such plea, surely it should not here, where there is no general issue which will put the plaintiff to full proof of his case. This is not an action *stricti juris*, like trespass, and should, in the liberty of pleading, be likened to an action on the case, according to Lord Mansfield's notion of that action. Ch. Pl. 357.

It should also be noted that the plaintiff in his first breach alleges a judgment and execution thereon, and in every succeeding breach refer to this one execution and the returns alleged to have been made thereon, and to the one term to which it was returnable. Hence it judicially appears that the whole gravamen of all the breaches is one and the same default, and not other and different defaults; from which it would seem to follow that what is an answer to one breach is an answer to every other. Usually when the breaches formally refer to " one other execution," or " a certain other judgment," the court is precluded from connecting one with the other breach, but must consider each as referring to a separate transaction; but here the plaintiff himself refers, in each succeeding breach, to the execution mentioned in the first, and without such reference being had, no valid breach is assigned, except to the first, and, therefore, by the form of pleading adopted by the plaintiff, he has not only enabled, but obliged the court to consider all the breaches as connected together, growing out of one official transaction, and substantially as alleging one and the same default.

Upon the whole, it is insisted for the defendant, that, for the reasons above stated, as well as for other defects in the breaches assigned, and in the replications of the plaintiff to the

defendants' pleas, the judgment for the defendant ought to be affirmed.

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the District Court of the United States for the Middle District of Alabama.

The suit was brought upon an official bond given by Alexander Smith, as sheriff of Coosa county, and his sureties, conditioned that he would well and truly perform all and singular the duties of his office as required by the laws of the State.

The declaration sets out a judgment, recovered by J. W. and B. Leavitt at the Fall term of 1839, in the Circuit Court of the Second Circuit of the State of Alabama, against Jeremiah M. Frion, for the sum of $3,472: also an execution upon the same issued to the said Smith, as sheriff.

Fourteen breaches of the condition of the bond are assigned, for the purpose of charging the defendant and his sureties with the payment of the judgment.

In order to understand the purport and legal effect of these breaches, and the pleadings which follow them, it is proper to refer to two provisions in the statutes of Alabama that have a material bearing on the subject. One is, that when the sheriff shall levy an execution on property claimed by a person not a party to the execution, such person may make oath that he is the owner: and thereupon it shall be the duty of the sheriff to postpone the sale until the next term of the court; and such court shall require the parties concerned to make up an issue, under such rules as it may adopt, so as to try the right of property before a jury at the same term; and the sheriff shall make a return on the execution accordingly, provided the person claiming such property, or his attorney, shall give a bond to the sheriff with surety equal to the amount of the execution, conditioned to pay the plaintiff all damages which the jury on the trial of the right of property may assess against him, in case it should appear that such claim was made for the purpose of delay. Clay's Dig. 211, § 52.

It is further provided, that it shall be the duty of the sheriff to return the property levied on to the person out of whose possession it was taken upon such person entering into a bond with surety to the plaintiff in the execution in double the amount of the debt and costs, conditioned for delivery of the property to the sheriff whenever the claim of property so made shall be determined by the court. Ib.

It was subsequently provided that one bond might be taken with a condition embracing substantially the matters contained in the two above mentioned. Ib. 213, § 62.

The other provision is, that whenever the sheriff shall fail to make the money on the execution on or before the first day of the term of the court before which the execution is returnable, the plaintiff or his attorney shall suggest to the court that the money could have been made by the sheriff, with due diligence, and it shall be the duty of the court forthwith to cause an issue to be made up to try the fact; and if it shall be found by the jury that the money could have been made with due diligence, judgment shall be rendered against the sheriff, and his sureties, or any or either of them, for the money specified in the execution, together with ten per centum on the amount. Ib. 213, § 85.

There is, also, a similar provision in the case of the suggestion of a false return on the execution by the sheriff. Ib. 218, § 84.

We have said there are fourteen breaches assigned of the condition of the bond in question in the declaration.

The first is, that there were divers goods and chattels, lands and tenements of Frion, the defendant in the execution within its lifetime, out of which the sheriff could have levied the amount of the judgment: but that he had neglected to levy and collect the same.

Second and third, that he had levied upon sufficient goods and chattels of the defendant, but had neglected to sell the same, and collect the amount.

The fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh and twelfth, that the return made upon the execution, namely, that the goods levied on had been claimed by A. B. Dawson and Samuel Frion, assignees of J. W. Frion, defendant in the execution, and claim-bond given to W. J. Campbell, now sheriff, and my successor in office — was false, setting out in various of these breaches the grounds of the falsity in the return, namely, either that no claim had been made to the property by Dawson and Frion, or if made, no affidavit, as required by the statute, had been furnished to the sheriff, or no bond had been required, or given; or that the proper affidavit had been made, but no bond given according to the requirement of the statute.

The thirteenth and fourteenth breaches admit an affidavit and bond, according to the statute; but charge that the claim-bond was lost by the negligence of the sheriff, and was not returned to the court with the execution at the return of the writ.

The defendants plead to the first, second, and third breaches, that at the April term of the court held in and for the county of Coosa, in 1840, the plaintiffs in the execution suggested to the court, according to the statute in such cases made and provided, after setting out the execution, and issuing of it to the

sheriff, and return of it without having levied the money there-on, that the same might have been collected, if due diligence had been used b, the sheriff; that thereupon an issue was formed upon this suggestion; and, that upon the trial such proceedings were had that the jury found the same in favor of the defendants. The plea further avers that the alleged neglects, defaults and breaches of duty in the first, second, and third breaches assigned, and in said suggestion are the same, and not different.

To this plea the plaintiffs replied, that the matters, neglects, and defaults in the said three breaches assigned in the declararation, were not the same identical matters, neglects, and defaults as in said plea mentioned, and for and in respect to which the said judgment in said plea mentioned was recovered in manner and form as set forth.

To this replication there was a demurrer and joinder, and judgment for the defendants.

The defendants, also, plead to all the breaches severally, except the first, that the goods and chattels levied on as stated in said breaches at the time of the said levy, and at the time said execution came to the hands of the said Smith, sheriff, as aforesaid, were not the property of the said Jeremiah M. Frion, the defendant in the execution, and were not liable to be taken for the payment or satisfaction of the said judgment.

There was a demurrer to this plea, and joinder, and judgment for the defendants.

These two pleas cover all the breaches assigned in the declaration, and if they furnished answers to them, the judgment for the defendants in the court below should be sustained.

The first three breaches, as we have seen, were first that there were goods of the defendant in the execution, and of which the sheriff could have levied the money; but that not regarding his duty, he neglected, and refused so to do. Second and third, that he did make a levy upon the goods, but neglected and refused to sell the same.

The plea sets up that the plaintiffs made a suggestion, under the statute, to the court, at the return of the execution, that the sheriff could have collected the money thereon, if he had exercised due diligence in the execution of the writ; and upon this suggestion or allegation an issue was formed between the parties and tried by a jury, who found a verdict for the defendants, upon which a judgment was rendered.

The replication to this plea is that the matters, neglects, and defaults in the said three breaches in the declaration were not the same matters, neglects, and defaults in the said plea mentioned, and in respect to which the judgment was recovered.

We think the replication is bad, on the ground that it raises an issue of law, rather than one of fact. The matters in all three of the breaches were necessarily involved in the question of due and proper diligence on the part of the sheriff in the execution of the *fi. fa.* The omission to levy upon the goods, or to sell after the levy, fell directly within the issue and inquiry in that proceeding under the statute; and we are bound to presume were the subject of examination before the court and jury, and were passed upon by them. Where the facts in issue appear upon the record, either expressly or by necessary intendment, it is not competent to contradict them, as this would be contradicting the record itself. The judgment is conclusive upon these facts, between the same parties or privies, whenever properly pleaded. If the matters involved in the issue do not appear upon the record, then it is competent to ascertain them by proof *aliunde.* 2 Phillips's Ev. 15, 20, 21; C. & H. Notes, p. 13; Note 14; also p. 163 – 4 and cases.

Here we cannot help seeing, that the matters sought to be put in issue by the replication are those necessarily involved in the former trial; and to uphold it would be to permit the same facts to be agitated over again. Certainly, neglect to levy the money on the execution out of the defendant's goods within the sheriff's bailiwick, or neglect to sell them, and make the money after the levy, are facts bearing directly on the former issue; and one criterion for trying whether the matters or cause of action be the same as in the former suit, is, that the same evidence will sustain both actions. 2 Phillips's Ev. 16; C. & H. Notes, p. 19, note 17.

The issue upon the suggestion, that the sheriff could have levied the money on the execution with the exercise of due diligence, is a very broad one. It is held, by the courts of Alabama, that the sheriff may discharge himself from responsibility by showing due diligence; and to enable him to do this nothing more is necessary than to traverse the facts contained in the suggestion. But, if the defence consists of new matter or matters of avoidance, he must then plead it. 3 Ala. R. 28.

It is difficult to conceive of a broader issue for the purpose of charging this officer with neglect or default in the course of his duty under the execution.

Then, as to the plea that the goods levied on were not the goods of the defendant in the execution, and not liable to the satisfaction of the judgment. This the demurrer admits. Of course, the sheriff had no authority to make the levy, and stood responsible himself to the owner, as a trespasser, as soon as the seizure took place. In the face of this admission on the record, it is impossible to hold him liable for the value of the goods.

The plea answers the material allegation in each of the assignments of breaches, and without which the assignment would be substantially defective, namely, the seizure of the goods on the execution. The allegations as to no claim having been made to the property by third persons, and no affidavit taken, or bond given, or if given that it was lost, are matters depending upon the levy. If that is denied or avoided, the several breaches are fully answered.

Now, the seizure of the goods of a third person, on the execution, does not change the title or make them the goods of the defendant on the execution. The only effect is, if after this the sheriff returns the execution *nulla bona,* the burden is thrown upon him in a suit for a false return to show that the goods were not the defendant's, and therefore not liable to the execution. Magne *v.* Seymour, 5 Wend. R. 309; 1 B. & C. 514.

The same principle was held in Mason et al. *v.* Watts, 7 Ala. R. 703. That was a case arising out of a suggestion against the sheriff and his sureties, under the statute to which we have referred, and in a case where the goods had been seized, and a return upon the execution accordingly. The suggestion was met that the goods were not the property of the defendant in the execution.

The court say, that the sheriff may excuse himself by showing that the defendant in the execution had no property in the goods levied upon. That the reason for this is, that the sheriff, by levying upon the goods of a third person, becomes a trespasser, and being so, the law does not impose on him the duty of holding the goods after he has ascertained their true ownership. Another observation in that case is applicable here. The court says it may be, if a loss results to the plaintiff by being cast in costs, or otherwise, from the neglect of the sheriff to retain the affidavit of claim, or bond executed by the claimant, he may be liable in an action on the case, but not for the value of the property levied on. Although the suit on the bond in this case, according to the practice in the courts of Alabama, may be regarded as a substitute for this action, still no such ground or cause of action is set out in any of the assignments of breaches, and of course no opportunity given to answer it. We are satisfied, therefore, that the plea is a full answer to all the breaches assigned to which it refers, and has been pleaded.

There are many other pleas, replications, and issues of law raised upon them, arising out of the useless number of breaches assigned in the declaration, and which have very much tangled and complicated the pleadings in the record; but we do not propose to examine or express any opinion upon them, as upon the whole record we see a complete defence to all the

causes of action set forth in the declaration, it would be an idle and profitless waste of time to enter upon their examination, and, besides, whatever might be our conclusions, they would not vary the result. Stephens's Pl. 153, 176.

The judgment of the court below is affirmed.

### Order.

This cause came on to be heard on the transcript of the record, from the District Court of the United States for the Middle District of Alabama, and was argued by counsel. On consideration whereof it is now here ordered and adjudged by this court, that the judgment of the said District Court in this cause be, and the same is hereby affirmed, with costs.